IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SEAN B. S.,

                          Plaintiff,

            v.                                    Civil Action No.
                                                  5:22-CV-1071 (DNH/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     CAEDEN SEHESTED, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                FERGUS J. KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that he was not disabled during the relevant period and, accordingly, is ineligible for the disability insurance benefits ("DIB") for which he has applied.  The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in May of 1981, and is currently forty-two years of age.  He was thirty-six years old on March 2, 2018, the date upon which he allegedly became disabled, and thirty-eight years old on March 20, 2020, the date upon which he filed his application for benefits.  Plaintiff measures five feet and ten inches in height, and weighed approximately two hundred and thirty pounds during the relevant period.  Plaintiff reportedly lives with his wife and children in Redwood, New York.

In terms of education, plaintiff reports that he graduated from high school, during which he had attended regular education classes.  He has worked in the past most relevantly as a construction worker and roofer, although he most recently worked part-time doing office tasks for a roofing

company after he became unable to perform heavier physical labor.

Plaintiff alleges that he suffers primarily from pain related to his neck, left shoulder, and back, which resulted predominantly from a motor vehicle accident that occurred in March 2018.  As is relevant to his application, plaintiff has treated for his impairments with sources at Samaritan Hospital, River Hospital, Pain Solutions of Northern New York, Upstate Bone and Joint Center, and Samaritan Family Health Center.  He also underwent a functional capacity evaluation in connection with his application for benefits.

At the administrative hearing related to his claim for disability benefits, held on May 4, 2021, plaintiff testified that he cannot sit longer than fifteen minutes to a half-hour before needing to stand up to stretch or lean on something, and can lift only ten pounds.  In terms of his activities, plaintiff reported that he works eight hours per week in an office, and that he takes his daughter to daycare on Mondays and Fridays and takes care of her at home the rest of the week.  He also stated that he prepares food and cares for his daughter, although she is "very independent" most of the time, and that he can perform chores like sweeping and washing dishes with breaks.  Plaintiff stated that his wife and older son do the laundry and other housework, but that he does some shopping.  Plaintiff further testified that he spends much of his day in his recliner due to pain.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on March 20, 2020.  Administrative Law Judge ("ALJ") Jennifer Gale Smith held an administrative hearing related to that application on May 4, 2021, and subsequently issued a decision on August 12, 2021, finding that plaintiff was not disabled.  That opinion became a final determination of the agency on September 9, 2022, when the Social Security Appeals Council denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Gale Smith applied the familiar, five-step sequential test for determining disability.  At step one, she found that, although plaintiff did engage in substantial gainful activity ("SGA") between January 2019 and March 2019, there was still a sufficient portion of the relevant period in which he had not engaged in SGA, and thus continued with the sequential analysis.[1]  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including status post cervical

---

[1]    As a result of the ALJ's step one finding, her analysis is focused upon plaintiff's limitations for the periods of March 2018 to December 2018, and April 2019 through the date of her decision.

discectomy and fusion surgery, thoracic disc protrusion without impingement, degenerative disc disease of the lumbar spine, left shoulder impingement, left-sided carpal tunnel syndrome, obesity, and migraine headaches.

At step three, ALJ Gale Smith examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions did not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.00, 1.15, 1.18, 11.00, 11.02, as well as Social Security Ruling ("SSR") 19-2p, which pertains to the evaluation of obesity, and SSR 19-4p, which addresses headache disorders.

ALJ Gale Smith next surveyed the available record evidence and concluded that, during the relevant period, plaintiff retained the residual functional capacity ("RFC") to perform a range of work at the sedentary exertional level, with the following exceptions:

> the claimant should not climb ladders, ropes, or scaffolds. He can occasionally balance, kneel, crouch, crawl, climb ramps, climb stairs, and stoop. The claimant is right hand dominant. He can frequently reach in all directions other than overhead, handle, finger, and feel using his left arm and hand. He should not reach overhead with his left arm. The claimant should be able to change positions every

thirty minutes. He can stay on task at the workstation during the position change. The claimant can tolerate no more than moderate levels of noise, as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition. He should avoid working outdoors in bright sunshine and work involving bright or flickering lights such as one would experience welding or cutting metals.

ALJ Gale Smith went on to step four and concluded that plaintiff is unable to perform his past relevant work as a construction worker. The ALJ then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing as representative positions the jobs of final assembler, document preparer, and electronics inspector. Based upon these findings, ALJ Gale Smith determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on October 17, 2022.[2]  In support of his challenge to the ALJ's determination, plaintiff argues that the ALJ erred by (1) failing to properly evaluate the opinion from non-examining medical expert Dr. Omar Hussamy, particularly with regard to the plaintiff's ability to

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

sit, and (2) failing to support her step five finding with substantial evidence because the vocational expert ("VE") testified that no work would be available if plaintiff is limited as described in the RFC finding.  Dkt. No. 10.

Oral argument was conducted in this matter, by telephone, on September 20, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic

work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>ALJ's Assessment of Dr. Hussamy's Opinion</u>

Plaintiff argues that the ALJ erred when assessing the opinion from non-examining medical expert Dr. Omar Hussamy by failing to provide a sufficient consideration of the relevant factors when rejecting his opined four-hour limitation related to sitting during the workday.  Dkt. No. 10, at 13-15.  Specifically, plaintiff argues that (1) the ALJ completely failed to engage in any analysis of the supportability factor, and (2) the ALJ relied on evidence that does not actually undermine Dr. Hussamy's opinion and failed to explain how the relevant evidence was inconsistent with that opinion.  *Id.*

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence.  Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL

168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[3] and consistency[4] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

---

[3]    On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[4]    On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

On June 30, 2021, Dr. Hussamy completed a written interrogatory form in which he provided a medical source statement describing plaintiff's ability to perform work-related physical activities. Administrative Transcript ("AT") at 956-65.[5] On that form, he opined that plaintiff can lift and carry up to ten pounds occasionally and sit for four hours, stand for two hours and walk for two hours, all both at one time and total in an eight-hour workday. AT 956-57. Dr. Hussamy further opined that plaintiff can continuously use his upper extremities for reaching, handling, fingering, feeling, pushing, and pulling, and continuously use his lower extremities to operate foot controls. AT 958. He opined that plaintiff can only occasionally climb ramps, stairs, ladders and scaffolds, balance, stoop, kneel, crouch, and crawl, and should only occasionally be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dusts, odors, fumes, other pulmonary irritants, extreme cold, extreme heat, vibrations, and moderate noise. AT 959-60.

The ALJ found Dr. Hussamy's opinion to be only partially persuasive, reasoning that while it is generally consistent with the evidentiary record, a few deviations from it are warranted. AT 26. First, the ALJ stated that, "in

---

[5]    The administrative transcript is found at Dkt. No. 9, and will be referred to throughout this decision as "AT __."

light of the complete evidentiary record, including the claimant's testimony,"
she adopted greater limitations on plaintiff's ability to reach than were
indicated by Dr. Hussamy.  *Id.*  The ALJ further stated that the sitting
restrictions opined by Dr. Hussamy are not well supported by the evidence,
citing specifically to the fact that (1) "[t]he record does not describe
uncontrolled spine pain or muscle atrophy such as would support an
inability to perform the sitting requirements of sedentary work," (2) recent
examinations show normal lower extremity strength and sensation, (3)
plaintiff has denied that he has pain radiating into his lower extremities, and
(4) he has described experiencing pain with prolonged sitting, not merely
with any sitting.  *Id.*  The ALJ then indicated that although she did not adopt
the sitting restrictions opined by Dr. Hussamy, she instead included a
limitation allowing for position changes to accommodate plaintiff's reports of
pain with prolonged sitting.  *Id.*

As to plaintiff's argument that the ALJ failed to assess the
supportability factor related to Dr. Hussamy's opinion, I acknowledge that
she did not explicitly provide any explanation of her consideration of this
factor.  However, such a procedural error does not necessarily require
remand.  *See John L. M. v. Kijakazi*, 21-CV-0368, 2022 WL 3500187, at *2
(N.D.N.Y. Aug. 18, 2022) (Sannes, J.) (stating that "failure to explain the

supportability and consistency of the medical opinions in the record is procedural error," but the court can affirm the Commissioner's decision "if a searching review of the record assures the court that the substance of the regulation was not traversed") (quoting *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293, at *2 (2d Cir. 2022)) (internal alterations omitted).  Rather, such error may be considered harmless where the court can glean the ALJ's consideration of this factor from his or her decision.  *See Alexa J. M. v. Kijakazi*, 22-CV-0243, 2023 WL 4467124, at *2 (N.D.N.Y. July 11, 2023) (Sannes, C.J.) (specifically rejecting the argument that failure to explain consideration of one of the relevant factors requires remand in every case, and stating further that "while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole").  The question is therefore whether the ALJ provided an indication of how she considered the supportability of Dr. Hussamy's opinion through her other findings.  I note that consideration of the supportability factor is by necessity somewhat more limited in scope when the regulation is applied to non-examining sources who have merely reviewed the record rather than having examined or treated the plaintiff; there are no treatment records

from such sources, and the basis for their opinions is therefore limited to their review of the other evidence in the record.  Nonetheless, the ALJ must consider any "objective medical evidence and supporting explanations presented by a medical source" when determining whether his or her opinion is supported.  20 C.F.R. § 404.1520c(c)(1).

In his medical source statement, Dr. Hussamy provided citations to medical issues and portions of the record as support for certain of his findings.  I note however, that in the portion of his response in which the standing, walking, and sitting limitations are expressed, Dr. Hussamy left the section calling for an explanation blank.  AT 957.  This is somewhat conspicuous, as he provides specific citations related to multiple other sections of the form when prompted for the basis of the limitations in those specific sections.[6]  AT 956, 959-60.  It is therefore not clear that the ALJ was required to consider the explanations listed in other sections as applying to the standing, walking, and sitting limitations.[7]  Further, in the portion of his opinion that applies to whether any of plaintiff's conditions

---

[6]     The form on which Dr. Hussamy provided his opinion notably asks for the source to identify the particular findings that support the assessment of limitations and to provide an explanation of why the findings are supportive in each separate section, allowing the source to provide different explanations specific to each section.

[7]     Plaintiff notably has not challenged the ALJ's findings regarding Dr. Hussamy's opinion other than as to the sitting limitation.

meet or equal a listing in the listing of impairments, while Dr. Hussamy

states a number of limitations he finds plaintiff experiences and includes

evidentiary support for those limitations, the limitations related to standing,

walking, or sitting are not specifically listed in that statement.  AT 965.

Again, there is no indication that Dr. Hussamy provided any explanation

regarding the basis for his sitting limitation specifically that the ALJ would

have been required to consider.  If Dr. Hussamy has not provided any

explanation in support of his sitting limitation, then there was nothing for the

ALJ to consider in relation to the supportability factor as is relevant to

plaintiff's challenge, and to find remand warranted merely to require the

ALJ to state as much would be to elevate the form of the regulations over

their substance.[8]

Even assuming the ALJ should have interpreted the citations

provided in other sections of the opinion as applying equally to the sitting

limitations, I nonetheless find no requirement for remand on this point

because the ALJ's rationale as to the supportability factor can be gleaned

---

[8]      Further, to the extent the ALJ's failure to assess supportability of the entire opinion by not addressing the explanations provided could be considered error overall, such error would still be harmless, given that the ALJ generally either adopted the other relevant parts of that opinion or, in the case of reaching for example, found even greater restrictions were warranted.  Plaintiff, who notably has not challenged the ALJ's reliance, or lack thereof, on any of the other portions of this opinion, therefore cannot show that he was harmed by any failure to consider whether those other limitations are supported by the explanations provided by Dr. Hussamy.

from the record.  Dr. Hussamy cites repeatedly to "3F p1-59, 7F p1-34, 8F p1-14, 9F p1-66, 5F p1-92" in support of his findings, as well as to "neck, mid-back, low back [and] left shoulder pain."  AT 956, 965.  Because Dr. Hussamy cites to whole exhibits, it is not entirely clear which specific findings he is indicating are supportive of his opined limitations.  I note, however, that many of the cited exhibits contain evidence showing objective findings and reports related to plaintiff's neck impairment, rather than his lower back.  Dr. Hussamy notably does not cite to plaintiff's physical therapy records, which appear to be where many of the notations of his back-related issues are documented.  Because the sitting limitation is the only additional part of Dr. Hussamy's opinion that plaintiff here challenges should have been adopted into the RFC finding, and inasmuch as it is the only material limitation in that opinion rejected by the ALJ, the fact that Dr. Hussamy may have provided support for other limitations more related to plaintiff's neck through his citation to evidence has little bearing on whether he has provided evidence that would support his opined sitting limitation.  Moreover, and importantly, the ALJ engaged in a fairly extensive discussion of the treatment evidence, including evidence from the exhibits cited by Dr. Hussamy, and thereby indicated that she considered all of that

18

evidence when assessing the opinion.[9]  AT 24-25.  Because the ALJ

clearly considered this evidence and found that the record overall, including

the exhibits cited by Dr. Hussamy, is not consistent with Dr. Hussamy's

sitting limitation, the only logical conclusion that can be drawn from the

ALJ's decision is that she also must have implicitly found that same

evidence to be unsupportive of that limitation to the extent Dr. Hussamy

may have relied upon it.  I therefore find that any error in the ALJ's failure to

explicitly discuss the supportability factor as to this opinion was at most

harmless error because the ALJ's rationale of her consideration of that

factor can be discerned from the context of her decision.

Regarding the consistency factor, plaintiff argues primarily that, in

rejecting the restriction that he can sit only four hours in an eight-hour

workday, the ALJ selectively relied on certain findings rather than

acknowledging the full range of pertinent abnormal objective notations of

pain and other restrictions.  Dkt. No. 10, at 13-15.  In support of this

argument, plaintiff cites to a handful of treatment notes showing

observations of positive symptoms related to his lower back.  Dkt. No. 10,

at 14 (citing AT 393, 757, 897-98, 901-02, 923, 925-28, 933).

---

[9]      I note that, although the ALJ did not cite evidence from exhibits 8F and 9F
specifically, much of that evidence is duplicative of the other cited exhibits.

The fact that plaintiff can point to a handful of treatment notes which show a few instances of abnormalities related to his lower back is insufficient to show that the ALJ's decision is unsupported by substantial evidence. *Lorraine Michele H. v. Comm'r of Soc. Sec.*, 21-CV-0013, 2022 WL 7285345, at *9 (N.D.N.Y. Sept. 13, 2022) (Dancks, M.J.) (noting that, where "a rational decisionmaker would not be compelled to reach a different conclusion when considering the evidence here, Plaintiff has not shown the ALJ's finding lacks the support of substantial evidence"). Further, it is not clear how a few notations on a few occasions would require the ALJ to consider those to be indicative of plaintiff's general presentation or functioning since early 2018, especially since all but one of these scant observations were made in records from either March or June of 2021. AT 757, 897-98, 901-02, 923, 925-28, 933. Because the record does not contain evidence that would suggest the ALJ's assessment of the record as a whole was inappropriately selective or failed to account for evidence of significant additional restriction, I find his failure to mention those few pieces of evidence when relying on other findings is not error.

Simply put, plaintiff's argument represents little more than a request to reweigh the evidence.[10]

More specifically, plaintiff has not indicated how the evidence the ALJ allegedly failed to appropriately account for is in any way contrary to her findings regarding his ability to sit within the capacity for sedentary work with the ability to briefly change positions every thirty minutes, or would fundamentally undermine her rejection of Dr. Hussamy's opinion that plaintiff could sit for only four hours in an eight-hour workday.  As the ALJ stated, the evidence documents that plaintiff has issues with sitting for prolonged periods of time, but there is seemingly no indication that he is unable to sit for at least six hours in an eight-hour workday when allowed to change positions at appropriate intervals while remaining on task.  Plaintiff himself reported that he can sit for between fifteen or thirty minutes before specifically needing to "lean" or "get up and stretch."  AT 41-42, 47. Plaintiff notably does not report a need to continue standing for a greater period of time or walk around following periods of sitting.

---

[10]     Further, I note that, as was discussed previously, the ALJ included a fairly detailed discussion of various medical evidence related to the treatment plaintiff received for his physical impairments, including in lower back impairment.  AT 24-26. This discussion provides support for the ALJ's finding that Dr. Hussamy's opinion is not consistent with the evidence in the record.

Further, the only evidence from a medical source cited by plaintiff observing his need to change positions is found in a physical therapy treatment note dated June 10, 2019, in which the source observed that plaintiff "appears uncomfortable throughout session trying to sit, needed to change positions several times throughout eval." AT 393. However, this does not indicate the nature of the position changes plaintiff engaged in, such as whether he needed to walk around the room, stand for longer periods of time, or merely stretch before being seated again. Given the lack of evidence, even in plaintiff's own reports, that he would experience a limitation in the amount of total time he could sit while being permitted intermittent position changes, the ALJ's finding that Dr. Hussamy's sitting limitation is inconsistent with the evidence is supported by substantial evidence.

For all of the above reasons, I find that the ALJ did not commit any harmful error requiring remand when assessing the opinion of Dr. Hussamy, and therefore recommend that the Commissioner's decision be affirmed in this respect.

    2.    <u>The ALJ's Step Five Finding</u>

Plaintiff also challenges the ALJ's step five finding, asserting that it is not supported by substantial evidence because the VE in fact testified that there are no jobs in the national economy that plaintiff can perform with the specific limitations that are included in the RFC.  Dkt. No. 10, at 15-17. This argument ignores the context of the hearing colloquy that took place between the ALJ and the VE.

When asked whether there was any work plaintiff can perform based on a hypothetical question that mirrors the RFC finding included in the ALJ's decision, including a limitation that [t]he claimant should be able to change positions every 30 minutes," with the assumption that "the claimant can stay on task at the workstation during the position change," the VE testified as follows: "No, Your Honor, not if the individual needed to maintain a standing or walking position.  It's how [INAUDIBLE] to see the short stretch break."  AT 61-62.  The ALJ then repeated the relevant limitation and clarified, "what I'm anticipating is that he would be able to change positions, but remain on task.  For example, if you're working at a keyboard, just stand up, stretch, keep your hands on the keyboard, and sit down."  AT 62-63.  Upon being given this clarification, the VE answered, "Okay.  Yes, Your Honor, I can get jobs with that clarification."  AT 63.  The

following exchange then occurred prior to the VE providing the relevant

three jobs:

> [ALJ]: Okay. And – and is there – I think that description meets what the restriction in hypothetical [sic]; would you agree?
>
> [VE]: Yes, Your Honor.
>
> [ALJ]: Okay. I just wanna make sure that my hypothetical's clear because I will revise the hypothetical if it's not.
>
> [VE] : No. Thank you, Your Honor.

AT 63.

Plaintiff's framing of the ALJ's questioning as her being somehow

coercive or leading, in an effort to force the VE to provide testimony

supporting the existence of jobs, is not persuasive.  Rather, the ALJ merely

asked follow-up questions to ensure the VE understood precisely what the

ALJ intended to convey with the hypothetical.

Nor do I read the VE's testimony as being inconsistent with the

limitations the ALJ ultimately included in the RFC finding.  The RFC notably

does include a specification that plaintiff is able to remain on-task while

engaging in any position changes, and that was one of the factors the VE

explicitly considered.  The ALJ did not materially change that limitation

when attempting to clarify her hypothetical to the VE, but rather provided an

illustrative example of what she meant by pointing to a situation in which plaintiff could stand up and stretch while keeping his hands on a keyboard. Plaintiff appears to base his argument on the premise that the ALJ needed to find plaintiff limited to that specific example in order to rely on the VE's testimony. That, however, is not the logical conclusion to be drawn from the testimony. I note that the ALJ clarified her hypothetical specifically in response to the VE's testimony that no jobs would be available "if the individual needed to maintain a standing or walking position," because, as is evident from the colloquy, the ALJ intended the limitation for the ability to remain on-task during position changes to indicate an ability to continue working while the change was occurring and until plaintiff sat down again. AT 62. Although the ALJ undeniably could have been more clear in documenting the RFC in her decision by specifying that the position change would be likely to involve standing for a short period of time to stretch and then sitting again, I do not read her RFC determination as being so inconsistent with the information provided to the VE as to represent a wholly different level of limitation or to preclude the ALJ from relying on the VE's testimony. Further, this is not a case wherein the court is required to divine what the ALJ meant in terms of changing positions. Rather, the hearing testimony provides explicit clarification of the ALJ's own intent and

interpretation of that limitation, and the VE's testimony specifically included an accommodation of that intent.  Such context cannot be ignored when reviewing the ALJ's decision.

I also note, again, that plaintiff's own testimony does not appear to contradict the ALJ's assumption that position changes needed to be only for standing momentarily to stretch before sitting again.  As was discussed previously, plaintiff reported that he can sit for between fifteen or thirty minutes before specifically needing to "lean" or "get up and stretch."  AT 41-42, 47.  The VE testified that no work would exist that plaintiff could perform only if it was the case that he needed to maintain a standing or walking position, but plaintiff has not pointed to any evidence to support such a need.  In any event, I find the ALJ's assessment of the evidence here to be reasonable.

For the above reasons, I find that the ALJ properly relied on the VE's testimony of the existence of relevant jobs because her RFC is not materially different from the hypothetical limitations she presented to the VE to elicit that testimony.  I therefore recommend that the ALJ's findings in this respect be affirmed.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 12) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:      September 26, 2023
            Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge